CITY OF HOLLIDAY, Appellant,

v.

Glenn Ray WOOD and Linda Carol Wood, Appellees.

No. 2–94–123–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 14, 1995.

Rehearing Overruled Feb. 1, 1996.

James A. Rasmussen, Wichita Falls, for Appellant.

Stephen R. Marsh, Wichita Falls, for Appellees.

Before CAYCE, C.J., and LIVINGSTON and BRIGHAM, JJ.

## OPINION

LIVINGSTON, Justice.

The City of Holliday appeals from an adverse judgment entered by the trial court in favor of appellees Glen Ray Wood and Linda Carol Wood regarding their controversy with the City over funds remaining in a volunteer ambulance service's account. The City sought a declaratory judgment, an accounting, injunctive relief to prevent conversion of the funds, and attorney's fees under section 37.009 of the Texas Civil Practice & Remedies Code. We affirm because the trial court's findings of fact and conclusions of law are supported by the evidence and the relief in the award of attorney's fees was proper under section 37.009 of the Texas Civil Practice & Remedies Code.

## FACTS

In 1981, Archer County, Texas and the City of Holliday formed an association with a group of volunteers (the "Volunteers") to provide ambulance services to the City and the northern portion of the County. The Volunteers were organized under the County's tax identification number. The general plan was for the County to provide an ambulance for the Volunteers to use; the City to provide the storage and maintenance of the ambulance; and the Volunteers to provide the actual labor, training, and emergency service. From 1981 until 1987, the City either paid the expenses of the Volunteers directly or reimbursed the Volunteers for its out of pocket expenses, subject to the approval of its City Council. In 1987, the City switched some of its methods of supporting the Volunteers and began contributing $100.00 per month to the Volunteers. The $100.00 per month was in lieu of a portion of the City's budgeted amount for the Volunteers, usually categorized as "General Supplies," and was to be used for small purchases and supplies. At the same time, the Volunteers opened a checking account using the County's tax identification number. The $100.00 monthly payments made by the City were deposited in this account. The City apparently continued to pay other regular operating and maintenance expenses for the ambulance, the Volunteers, and for the ambulance itself.

In July 1989, the City voted to terminate the arrangement with the Volunteers and entered into an agreement with a private company to provide such services. The City made demand upon the Volunteers to release approximately $2,300.00 that remained in the checking account. When the suit was filed on September 16, 1991, the Woods were the only signatories on the account.

At a trial to the court, the court ruled in favor of the Volunteers and denied the City its claim for the remaining funds. On February 9, 1994, the City filed a motion for new trial that was overruled by law. On March 1,

1994, the trial court filed findings of fact and conclusions of law. On March 4, 1994, the trial court signed an "Amended Final Judgment" that confirmed the original judgment in favor of the Woods but added an award of attorney's fees in their favor that was taxed as costs against the City.

## STANDARD OF REVIEW

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994).

In points of error one and two, the City argues that the trial court erred in failing to find a portion of the funds belonged to the City. The City says that there is no evidence to support the court's findings that the payments made by the City, which were placed in the "account," were payments for services rendered or reimbursement of expenses and that such a finding was against the great weight and preponderance of the evidence. The City says there is no evidence that the Volunteers ever contracted to provide ambulance services to the City or the County. Because the City argues both of its first two points of error together and both points assert that the matter in question was established as a matter of law, we will also discuss them jointly. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

If an appellant is attacking the legal sufficiency of an adverse answer to a finding on which he had the burden of proof, the Texas Supreme Court has stated that the appellant must, as a matter of law, overcome two hurdles. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, then the entire record must be examined to see if the contrary proposition is

established as a matter of law. *Id.; Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

Because the City had the burden of proving that the funds remaining in the account were the City's funds, we must first determine whether there is any evidence to support the court's findings that the "funds were paid for services rendered, reimbursement or expenses." The evidence shows that the Volunteers used the County's tax identification number and that both the City and the County agreed to provide or pay for certain equipment in order to create and maintain ambulance services for the area. Thus, there is evidence that an agreement or contract had been entered into and that the obligation of each of the parties to provide certain things, e.g., the ambulance, the maintenance, or the actual services, was agreed upon.

The evidence also shows that money from various sources went into the account: from the City, from donations, and from dues. Also, the City correctly points out that there is evidence that the City wrote checks to the Volunteers in the amount of $2,100.00, which would support the Volunteers' position that the payments were made for some reason. The City's own Exhibit # 1 indicates that at the May 19, 1987 meeting, the City Council planned on setting up a separate account for the "ambulance donations" and did so by a $200 contribution from an individual that was subsequently transferred to the Volunteers' account. The entire exhibit reflects an ongoing struggle with keeping the equipment running and how to pay for the more minor yet still important expenditures. Mrs. Boyles, the City secretary, testified that the payments by the City to the Volunteers would "cover those miscellaneous expenses or general supplies or oxygen." Other evidence shows that coveralls and smocks were also purchased during the existence of the account. Therefore, there is evidence to support the court's finding that the funds paid were also for reimbursement or expenses. Because there is some evidence that supports the findings, we do not need to determine whether the record on appeal establishes the contrary proposition as a matter of law. The

City's first and second points of error are overruled.

The City's third point of error challenges the court's award of attorney's fees on two grounds: 1) that the Declaratory Judgment Act does not authorize a defending party to recover attorney's fees and, if it did, the defending party must properly plead and prove such fees; and 2) that the City is immune from any award of attorney's fees against it. The Woods argue that the issue of attorney fees was tried by the court via the pleadings and the testimony and that the award of attorney fees was within the discretion of the trial court. TEX.CIV.PRAC. & REM. CODE ANN. § 37.009 (Vernon 1986).

■ The statute allows the judge to award costs and fees but does not mandate such an award and does not limit against whom the award may be made. *Id.* The only limitation on the award of costs or fees is that the award be "equitable and just." *Id.* In such a case, the trial court's decision will be reviewed under an abuse of discretion standard and will not be reversed on appeal absent a clear showing of an abuse of discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985).

■ To determine whether a trial court abused its discretion, we must decide "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). Under an abuse of discretion standard, legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *In re Driver,* 895 S.W.2d 875, 877 (Tex.App.—Texarkana 1995, no writ); *D.R. v. J.A.R.,* 894 S.W.2d 91, 95 (Tex.App.—Fort Worth 1995, writ denied) (op. on reh'g); *Mai v. Mai,* 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ). Merely because a trial judge may decide a matter within its discretion in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,*

476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ The first question is whether a defendant who successfully defends against a declaratory judgment action can recover attorney's fees under section 37.009 of the Texas Civil Practice & Remedies Code. According to *Knighton v. International Bus. Machines Corp.,* 856 S.W.2d 206, 210 (Tex.App.—Houston [1st Dist.] 1993, writ denied), "[t]he award of attorney's fees is not limited to the plaintiff or the party affirmatively seeking declaratory relief." This position has previously been adopted by this court in *Estopar Holdings, Inc. v. Advanced Metallurgical Tech.,* 876 S.W.2d 205, 211 (Tex.App.—Fort Worth 1994, no writ). *See also Whiteside v. Griffis & Griffis, P.C.,* 902 S.W.2d 739, 746 (Tex.App.—Austin 1995, writ denied) (court failed to uphold award of attorney's fees under the Declaratory Judgment Act, but it was because the plaintiff had not sought relief under that Act).

■ Regarding the City's claim of immunity from an imposition of costs or attorney's fees under the Declaratory Judgment Act, the defense was waived by the City. The City says it could not have waived its affirmative defense of immunity because attorney's fees were not requested by the defendants. However, the Woods specifically prayed for attorney's fees in their first amended original answer. Further, the City misstates the law when it says that attorney's fees are not authorized against a plaintiff under a Declaratory Judgment action when the defendant is not seeking affirmative relief. Further, the Texas Supreme Court has held that such fees and costs were contemplated by the Declaratory Judgment Act and that under certain situations the claim of governmental immunity is waived regardless. *See Texas Educ. Agency v. Leeper,* 893 S.W.2d 432, 445–46 (Tex.1994). Because the City waived the defense of sovereign immunity by not pleading it or presenting evidence to support the defense at trial, the City has waived its defense. *See Duncan v. Pogue,* 759 S.W.2d 435, 435–36 (Tex.1988); *Rodeheaver v. Steigerwald,* 807 S.W.2d 790, 791–92 (Tex.App.—Houston

[14th Dist.] 1991, writ denied), *cert. denied,* 502 U.S. 1093, 112 S.Ct. 1167, 117 L.Ed.2d 414 (1992). Therefore, the judgment of the trial court is affirmed.